IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

HUNT VALLEY BAPTIST
CHURCH, INC.,
    *Plaintiff*,

v.

BALTIMORE COUNTY, MARYLAND,
et al.
    *Defendants*.

Civil Action No. ELH-17-804

**MEMORANDUM**

Plaintiff Hunt Valley Baptist Church, Inc. ("HVBC" or the "Church") filed suit against Baltimore County and the Board of Appeals of Baltimore County (the "Board"), alleging, *inter alia*, violations of the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. §§ 2000cc *et seq.*; the Free Exercise Clause of the First Amendment; the Equal Protection Clause of the Fourteenth Amendment; and Article 36 of the Maryland Declaration of Rights. ECF 1 ("Complaint").

The case is rooted in a zoning dispute. HVBC sought to obtain a special exception from the Board to build a church on 16.6 acres of land in Cockeysville, Maryland. *See* ECF 21 at 4-18. However, the Board rejected the Church's application. *Id.* at 15-17; *see also* ECF 8-2 at 131-144. This litigation followed.

Following this Court's ruling (ECF 17) with respect to defendants' motion to dismiss (ECF 8), the Court issued a Scheduling Order. ECF 27. The parties are now engaged in discovery, pursuant to the Scheduling Order of December 7, 2017. *Id.*

On May 11, 2018, defendants filed an "Objection To Plaintiff's Expert Designations, Request For Hearing, And Request For Extension To Designate Defendants' Experts" (ECF 46), along with a supporting memorandum of law (ECF 46-1) (collectively, the "Motion"), and

exhibits. *See* ECF 46-2 at 1-81.[1] In the Motion, defendants requested "a *Daubert* hearing . . . ." ECF 46 at 1. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993). Moreover, defendants contend, *inter alia*, that the testimony of plaintiffs' five proposed experts is not relevant under rules 401 and 702 of the Federal Rules of Evidence. ECF 46-1 at 3. Among other things, defendants insist that the Church "should not be allowed to attack the Board's decision with evidence that was not presented to the Board." *Id.* at 4. Further, defendants ask the Court to extend the deadline for their expert designations until 30 days after the Court has ruled on the Motion. ECF 46 at 1.

Plaintiff opposes the Motion. *See* ECF 47 ("Opposition"). The Church argues, *inter alia*, that the "issues raised in Defendants' 'Objections' are not issues appropriate for a *Daubert* hearing, but for arguments in dispositive motions or motions *in limine* following the conclusion of discovery." ECF 47 at 3.

In defendants' reply (ECF 48, "Reply"), they reiterate that the expert "testimony should have [been] presented to the Board in the first instance," at least as to plaintiff's "as applied challenge." ECF 48 at 2. They add that plaintiff's "attempted use of after-the-fact expert evidence should not be allowed to make up for Plaintiff's failure to request conditional approval . . . [or] to seek a variance . . . ." *Id.* at 10.

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6. For the reasons that follow, I shall deny the Motion (ECF 46), without prejudice to the right of defendants to renew their objections as to plaintiff's expert witnesses, at the appropriate time.

**Discussion**

---

[1] On May 16, 2018, the Court held a telephone conference with counsel to discuss the Motion. *See* Docket.

## A.

Pursuant to Federal Rule of Evidence 104(a), the court is responsible for determining "preliminary questions concerning the qualification of a person to be a witness" and "the admissibility of evidence," including the admissibility of expert testimony under Federal Rule of Evidence 702. With regard to expert testimony, it is well settled that "[t]he party seeking admission of the expert testimony bears the burden of establishing admissibility by a preponderance of the evidence." *Fireman's Fund Ins. Co. v. Tecumseh Prods. Co.*, 767 F. Supp. 2d 549, 553 (D. Md. 2011); *see Daubert*, 509 U.S. at 590; *Cady v. Ride-Away Handicap Equipment Corp.*, 702 Fed. App'x 120, 124-25 (4th Cir. 2017); *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001); *Maryland Casualty Co. v. Therm-O-Disc., Inc.*, 137 F.3d 780, 783 (4th Cir. 1998); *Casey v. Geek Squad ® Subsidiary Best Buy Stores, L.P.*, 823 F. Supp. 2d 334, 340 (D. Md. 2011).

Fed. R. Evid. 702 provides that a properly qualified expert witness may testify regarding technical, scientific, or other specialized knowledge in a given field if the testimony would assist the trier of fact in understanding the evidence or to determine a fact in issue. The rule "was intended to liberalize the introduction of relevant expert evidence." *Westberry v. Gislaved Gummi AB*, 178 F. 3d 257, 261 (4th Cir. 1999).

Rule 702, which governs expert testimony, provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

In *Daubert*, 509 U.S. at 597, the Supreme Court made clear that scientific evidence is admissible under Rule 702 if "it rests on a reliable foundation and is relevant." The Court explained that expert scientific testimony must be grounded "in the methods and procedures of science," and it must be something more than subjective belief or unsupported assumptions. *Id.* at 589–90. Moreover, the evidence or testimony must be relevant to the extent that it will "assist the trier of fact to understand the evidence or to determine a fact in issue." *Id.* at 591; *see also Nease v. Ford Motor Co.*, 848 F.3d 219, 229 (4th Cir. 2017); *United States v. Forrest*, 429 F.3d 73, 80–81 (4th Cir. 2005). In *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999), the Supreme Court extended the principles pertaining to scientific expert testimony to other expert testimony requiring technical or specialized knowledge.

Under *Daubert*, 509 U.S. at 597, the trial court serves a "gatekeeping role," by making pretrial determinations "of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* at 592–93. This gatekeeper role helps to ensure that the expert's testimony "rests on a reliable foundation and is relevant to the task at hand." *Id.* at 597; *see Lord & Taylor, LLC v. White Flint, L.P.*, 849 F.3d 567, 577 (4th Cir. 2017).

As to reliability, *Daubert* articulated five factors that the trial court should consider in evaluating the reliability of an expert's reasoning or methodology: (1) whether the particular scientific theory has been or can be tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; (4) whether there are standards controlling the method; and (5) whether the technique has gained general acceptance in the relevant scientific community. *Daubert*, 509 U.S. at 593–94; *see United States v. Crisp*, 324 F.3d 261, 265–66 (4th Cir. 2003).

As a whole, the factors are meant to ensure that "an expert, whether basing his testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire*, 526 U.S. at 152. However, the factors are meant to be "helpful, not definitive," and not all factors necessarily apply in a given case. *Id.* at 151; *see Nease*, 848 F.3d at 229. Indeed, the Supreme Court has said that the factors are not a "checklist." *Kumino*, 526 U.S. at 150.

Of relevance here, the expert testimony need not be "'irrefutable or certainly correct'" in order to be admissible. *United States v. Moreland*, 437 F. 3d 424, 431 (4th Cir. 2006) (citation omitted); *see Daubert*, 509 U.S. at 596; *Bresler v. Wilmington Trust Co.*, 855 F.3d 178, 195 (4th Cir. 2017); *Westberry*, 178 F.3d at 261. The trial court "should meticulously focus on the expert's principles and methodology, and not on the conclusions that they generate." *McDowell v. Brown*, 392 F.3d 1283, 1298 (11th Cir. 2004). To this end, the proponent must show that the opinion is reliable in light of the methodology. *See, e.g.*, *Oddi v. Ford Motor Co.*, 234 F. 3d 136, 145 (3rd Cir. 2000).

In other words, the Supreme Court did not intend the gatekeeper role to "supplant the adversary system or the role of the jury: '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *Allison v. McGhan Medical Corp.*, 184 F.3d 1300, 1311–12 (11th Cir. 1999) (quoting *Daubert*, 509 U.S. at 596); *see Moreland*, 437 F. 3d at 431 (recognizing that "expert testimony is subject to testing by vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof.").

But, a court should exclude testimony based on "belief or speculation," *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999), or when not supported by the record. *Bryte ex rel. Bryte v. Am. Household, Inc.*, 429 F.3d 469, 477 (4th Cir. 2005); *Tyger Const. Co. v.*

*Pensacola Const. Co.*, 29 F.3d 137, 142 (4th Cir. 1994); *Casey*, 823 F. Supp. 2d at 340. And, "evidence that has a greater potential to mislead than to enlighten should be excluded." *Westberry*, 178 F.3d at 261 (citation omitted). Moreover, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

In *Benedi v. McNeil-P.P.C., Inc.,* 66 F.3d 1378, 1384 (4th Cir. 1995), the Fourth Circuit recognized that "epidemiological studies are not necessarily required to prove causation," but a proposed expert must show that "the methodology employed . . . in reaching his or her conclusion is sound." The case of *McEwen v. Baltimore Washington Medical Center Inc.*, 404 F. App'x 789, 791–92 (4th Cir. 2010) (per curiam) is also instructive. There, the Fourth Circuit affirmed the exclusion of expert medical testimony that was deemed to be conclusory. Because the doctor's testimony on causation failed to identify any support in the medical literature, it was, in effect, "ipse dixit." *Id.* Similarly, a court may exercise its "discretion to find that there is 'simply too great an analytical gap between the data and the opinion proffered.'" *Pugh v. Louisville Ladder, Inc.*, 361 F. App'x 448, 454 n.4 (4th Cir. 2010) (quoting *Joiner*, 522 U.S. at 146).

With regard to an expert's qualifications, the Advisory Committee's notes to Rule 702 provide that experience alone, or in conjunction with "other knowledge, skill, training or education," can provide sufficient foundation for expert testimony. *See Kumho Tire*, 526 U.S. at 156 (stating that "no one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience."). On the other hand, an expert witness may not offer an opinion where the subject matter goes beyond the witness's area of expertise. *See Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994); *see also Smith v.*

*Central Admixture Pharm. Servs., Inc.*, 2010 WL 1137507, at *3 (D. Md. Mar. 19, 2010) ("It is well established that 'general expertise is not sufficient to qualify [an expert] to testify on a matter that requires particularized knowledge, training, education, or experience.'" (quoting *Fitzgerald v. Smith & Nephew Richards, Inc.*, 1999 WL 1489199 (D. Md. Dec. 30, 1999))).

Moreover, proposed testimony that concerns matters within the common knowledge and experience of a lay juror does not pass muster. *United States v. Dorsey*, 45 F.3d 809, 814 (4th Cir. 1995); *Kopf v. Skyrm*, 993 F.2d 374, 377 (4th Cir. 1993). "While the fit between an expert's specialized knowledge and experience and the issues before the court need not be exact . . . an expert's opinion is helpful to the trier of fact, and therefore relevant under Rule 702, 'only to the extent the expert draws on some special skill, knowledge or experience to formulate that opinion.'" *Shreve v. Sears, Roebuck & Co.*, 166 F. Supp. 2d 378, 392–393 (D. Md. 2001) (quoting *Ancho v. Pentek Corp.*, 157 F.3d 512, 518 (7th Cir. 1998)).

Of import here, Rule 702 does not relieve the party seeking admission of meeting the requirements of other applicable rules. This includes Rule 403's instruction that evidence may be excluded for undue prejudice, confusion of the issues, or a potential to mislead the jury. *Casey*, 823 F. Supp. 2d at 341.

With this background, I turn to consider the experts.

### B.

David Kozera, a professional engineer, conducted "geotechnical testing" at the property to determine whether "installation of a porous paving parking lot" (ECF 47 at 4) satisfies Baltimore County Zoning Regulation ("BCZR") § 1A03.4.B.3. That provision requires, in

relevant part, that "no more than 10% of any lot in [the Zone] may be covered by impermeable surfaces[.]"

Defendants observe that Kozera conducted six infiltration tests some thirteen months after the Board rendered its decision. ECF 46-1 at 22. To be sure, *Daubert* applies to the expert field of engineering. *Nease*, 848 F.3d at 229. But, defendants concede that Kozera's tests "appear to be scientifically reliable." *Id.* Instead, they argue that the opinions are not relevant, apparently because they "were performed well after the Board's decision . . . ." *Id.* Also, they claim that the opinions of Kozera "would not help the trier of fact, because they are not relevant and would create significant risk of unfair prejudice, confusing the issues, and misleading the jury." *Id.*

James Matis, another professional engineer, has opined as to whether the proposed parking lot is consistent with the provisions of BCZR § 1A03.4.B.3. *See* ECF 46-1 at 20. Defendants argue, *inter alia*, that Matis's opinions are not "relevant . . . and they create a significant risk of unfair prejudice, confusing the issues and misleading the jury." *Id.* at 21. They note that Matis's report is dated April 7, 2018, almost fourteen months after the Board rendered its decision. *Id.*

As to the reliability of Matis's opinions, defendants claim that Matis "offers no proof that the soils will support the porous paving solution to Plaintiffs [sic] impervious surface problem." *Id.* at 21. Further, defendants argue that the opinions of Matis are "not reliable" because Matis relied on the "'results of . . . preliminary infiltration testing'" to determine that "'the use of porous paving as a storm water management infiltration practice appears feasible'" at the property. *Id.* (quoting ECF 46-2 at 14, Matis Report).

Matis's Report states, in relevant part, ECF 46-2 at 14:

> While these preliminary results indicate that the use of permeable paving as a storm water management infiltration practice is feasible and promising, further testing and evaluations would be undertaken based on consultation with the geotechnical engineer and the technical review staff of DEPS. These discussions, tests and evaluations would likely occur during the development approval process, but certainly before the submission of Final Storm Water Management Plans[.]

Plaintiff counters that when the terms "preliminary infiltration testing" are "placed in context, it is clear that the[y] do not implicate [Matis's] methodology." ECF 47 at 5. Rather, Matis was "simply indicating that the infiltration testing at the site to determine if porous paving would be feasible would normally occur during the <u>development review process</u> for the Church following a grant of special exception; not during the zoning application process before the Board." *Id.* (emphasis in original).

Further, the Church argues, *id.*:

The important points here are two-fold: (1) that the special exception should not have been denied at this stage, but should have proceeded to the development approval process, and (2) that given that the soils meet the appropriate standards, such approval during that process is likely.

And, the Church adds, *id.* at 5-6:

> Mr. Matis' opinion is certainly relevant to the issue of whether this Board had a compelling governmental interest in denying the application, whether the denial was the least restrictive means of achieving such interests, and whether the denial was discriminatory based upon a finding that the Plaintiff could not meet the criteria to utilize porous paving at the site as compared to other applicants. Defendants' Objection to Mr. Matis' report does not implicate *Daubert* scrutiny at this stage of the litigation.

Mark Eisner, a licensed geologist, "rendered an expert report discussing the hydrogeologic impacts of Plaintiff's [land] use and compar[ed] them to other uses in the same zoning district.[]" ECF 47 at 4. Defendants assert that "[t]he reliability of this report is questionable[.]" ECF 46-1 at 24. And, they insist that Eisner's testimony is "not relevant and

would create a significant risk of unfair prejudice, confusing the issues, and misleading the jury." ECF 46-1 at 24.

According to HVBC, defendants merely advance a bald challenge to Eisner's methodology, "with no explanation." ECF 47 at 4. And, HVBC offers its view as to the relevance of the testimony. *Id.*

Andrew Verzilli, who holds an M.B.A. degree, is an economist who opined as to the "estimated" economic losses sustained by plaintiff because of the Board's denial of plaintiff's zoning request. *See* ECF 46-1 at 22-23. The Expert Report of Verzilli (ECF 46-2 at 37-66) states, in part, ECF 46-2 at 39:

> . . . HVBC was denied the special exception, and consequently, has incurred 1) significant expenses/costs, 2) increased construction costs, and 3) an increase in interest payments for the Promissory Note executed relative to the existing church.

Defendants contend that "[t]he conclusory assertion 'and consequently, has incurred' is insufficient to establish causation" for the purpose of determining economic losses in this litigation. ECF 46-1 at 23. They also assert that the testimony of Verzilli "would not help the trier of fact because it is not relevant or reliable and it creates a significant risk of unfair prejudice, confusing the issues, and misleading the jury." ECF 46-1 at 23. And, defendants contest the period for which damages would be compensable.[2]

HVBC counters, *inter alia*, that its expenses in regard to the special exception proceedings are consequential damages, because defendants "treat religious law uses differently and worse . . . ." ECF 47 at 6. And, they claim that "[t]he period of damages is an issue for the trier of fact and not the subject of a *Daubert* hearing." *Id.*

---

[2] In addition, defendants note that Verzilli failed to include attorney's fees bills from the Church's lawyer at the zoning hearing. The Church agrees as to the omission, and has advised that it will provide an amended report, pursuant to Fed. R. Civ. P. 26(e). ECF 47 at 6. Therefore, I need not address this issue.

Louis Silver is a retired, ordained Baptist minister who holds an M.B.A. and an M.A. in Theological Studies. ECF 47 at 6. Defendants seem to challenge the relevance of Silver's opinion that the current location of the Church does not meet its needs. *See* ECF 46-2 at 78-81 (Silver Report).

Defendants observe that Silver's testimony relies on "discussions with Plaintiff's Pastor, the Holy Bible, Marketing for Congregations[:] Choosing to Serve People More Effectively, Kotler, et al., Abingdon Press, 1992; and The Socioeconomic Contributions of Religion to American Society[:] An Empirical Analysis[:] Brian Grim, www.religjournal.com". ECF 46-1 at 25; *see* ECF 46-2 at 78. They argue, ECF 46-1 at 25:

> [N]either these materials nor [Silver's] stated credentials are sufficient to meet the requirements of Fed. R. Evid. 702 to render the opinions in his report, which are as follows:
>
> a) The facilities of Hunt Valley Baptist Church are not only inadequate in terms of size, but also not all visible to the community. They are located down a narrow and not well lit road set off from the main thoroughfares.
>
> ***
>
> b) Hunt Valley Baptist Church needs its proposed new larger and more visible facility in order to fulfill its religious and societal mandate to be the light to the nations within their community.

Defendants offer no explanation as why they believe Silver's "credentials" and "materials" are "insufficient." But, they argue, ECF 46-1 at 25-26:

> The first opinion ignores the fact that Plaintiff itself chose to purchase its current property at 1800 Worthington Heights Parkway. Neither of the Defendants was involved in that decision. Moreover, the opinion post-dates the Board's decision. It is not relevant or reliable and creates a significant risk of unfair prejudice, confusing the issues and misleading the jury. Significantly, it would be of no help to the trier of fact. The same is true of Mr. Silver's second opinion.

HVBC counters that the relevance of an expert does not give rise to a *Daubert* hearing. ECF 47 at 7. Moreover, the Church asserts that the need for the proposed fellowship hall is relevant to the Church's "substantial burden claims." *Id.*

## C.

As noted, defendants ask the Court to convene a *Daubert* hearing with regard to the Church's experts. ECF 46. They argue that plaintiff cannot "establish the relevance and reliability of their experts' testimony under Fed. R. Evid. 702" because, *inter alia*, the opinions offered by plaintiff's expert witnesses would not help the trier of fact, are not relevant to plaintiff's claims, and are not reliable. *See*, *e.g.*, ECF 46-1 at 3, 6; 25-26. In their view, the "after-the-fact expert testimony" (*id.* at 4) "create[s] a significant risk of unfair prejudice, confusing the issues and misleading the jury under Fed. R. Evid. 403." *Id.* at 3.

At the heart of the defense's argument is the belief that the Church is limited in its evidence to that which it presented to the Board in regard to the unsuccessful zoning application for a special exception. Noting that the experts at issue were not called as witnesses before the Board, defendants maintain that plaintiff should not be allowed "a re-do of the Board hearing." ECF 46-1 at 4. Further, the defense argues that the proposed expert testimony is neither material nor relevant, "because the Board never heard the evidence." *Id.*

Defendants misapprehend the nature of this case. To be sure, the case is rooted in a zoning matter, and the Church could have pursued its right to judicial review in State court. Instead, it chose to bring a federal law suit based, *inter alia*, on RLUIPA and the First Amendment. In doing so, it is not limited to the evidence presented to the Board.

Moreover, defendants present scanty challenges to reliability. Rather, their objections focus primarily on claims of unfair prejudice, relevance, and confusion of the issues. Such challenges are not *Daubert* challenges. Further, "'questions regarding the factual underpinnings

of the [expert witness'] opinion affect the weight and credibility'" of the witness' assessment, "'not its admissibility.'" *Bresler*, 855 F.3d at 195 (citation omitted).

Defendants' arguments as to relevance and prejudice are better framed as motions in limine. The deadline for the filing of motions in limine has not yet been set.

"A motion *in limine* is a request for guidance by the court regarding an evidentiary question." *United States v. Luce*, 713 F.2d 1236, 1239 (6th Cir. 1983), *aff'd*, 469 U.S. 38 (1984). Motions in limine help to streamline a case, because such motions "enable[] a court to rule in advance on the admissibility of documentary or testimonial evidence and thus expedite and render efficient a subsequent trial.'" *INSLAW, Inc. v. United States,* 35 Fed. Ct. 63, 65-66 (1996) (citation omitted).

To be sure, rulings on such motions assist counsel in preparation for trial. However, such rulings are preliminary, and are made in the discretion of the court. *Luce*, 713 F.2d at 1239-40. When the evidence is actually offered at trial, the trial court may opt to change its ruling. *Id*. at 1239.

**Conclusion**

For the reasons stated above, I shall DENY the Motion (ECF 46), *without prejudice* to the right of defendants to renew their objections by way of motions in limine and/or a *Daubert* hearing, at the appropriate time. However, I shall GRANT defendants' request for an extension of time to designate their expert witnesses. To the extent defendants seek to designate expert witnesses, they must do so by **July 6, 2018.**

The remaining deadlines in the Scheduling Order shall be extended, as follows:

July 31, 2018     -     Rule 26(e)(2) supplementation

August 22, 2018     -     Discovery deadline; submission of status report

September 7, 2018     -     Requests for Admission

September 24, 2018   -   Dispositive pretrial motions deadline

An Order follows.


Date: June 6, 2018                              /s/
                                        Ellen L. Hollander
                                        United States District Judge